UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:05cv457-R

INDIGO MOON PRODUCTIONS, LLC                                                    PLAINTIFF

v.

HASBRO, INC., et. al.                                                                               DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Motion to Dismiss (Docket #6). The Plaintiff has responded (Docket #10), and the Defendants have replied to that response (Docket #11). Subsequently, the Plaintiff filed a surreply (Docket #16), to which the Defendants responded to as well (#19). This matter is now ripe for adjudication. For the following reasons the Defendants' Motion is **GRANTED in part**, as to the issue of standing, meaning that this matter is **STAYED** so that the Plaintiff may petition the bankruptcy court to amend or reopen its bankruptcy case. All other claims asserted in the Defendants' Motion are **DENIED** at this time, with leave to re-file.

## BACKGROUND

This case relates to the alleged theft by Defendants, Hasbro Inc. ("Hasbro"), of Plaintiff Indigo Moon Productions, LLC's ("Indigo Moon") ideas and concepts related to the popular board game "Clue," which is distributed by Hasbro. On June 28, 2000, the parties entered into a "Confidential Information Agreement" ("Agreement"), which sets forth the terms in which the companies were to explore the possibility of working on the development of interactive games based on the board game "Clue." Some of the features of the Agreement included: that the material discussed and developed would remain secretive; that Hasbro would only use the materials developed by Indigo Moon as defined by the stated purpose of the Agreement; and all

property received shall remain the property of the disclosing party.

In August of 2000, Hasbro gave Indigo Moon a "wish list" that suggested some game development initiatives. One month later Hasbro again contacted Indigo Moon, this time asking Indigo Moon to design and develop an expansion or upgrade for the "Clue" game that would work on a "Play Station 2" system and personal computers. From these requests Indigo Moon submitted a proposal to Hasbro on November 13, 2000, entitled "Clue: Whodunit Design Proposal," which Indigo Moon had designated as their own "confidential property." Indigo Moon states that it was industry custom and practice for a party requesting information to compensate the other party for the games designs or concepts that are used by the receiving party.   In late 2000 Hasbro was acquired by Infogrames, and became known as "Atari Interactive." After the acquisition Indigo Moon still kept in contact with the Defendants regarding the "Clue" project. By the Spring of 2001 the Defendants communicated to Indigo Moon that they no longer wanted to work with Indigo Moon on the "Clue" project. Indigo Moon states that the Defendants assured Indigo Moon that they would not use any of the Plaintiff's concepts, designs or ideas.

In July of 2001, Indigo Moon filed for Chapter 11 bankruptcy, which was later converted to a Chapter 7 bankruptcy claim on December 19, 2001. Indigo Moon listed "Game projects in various stages of development" as part of their assets prior to the Chapter 7 conversion. On February 8, 2002, Indigo Moon explained to the bankruptcy trustee assigned to their case that the "game projects" included the "Clue" upgrade, and the trustee, John R. Wilson, noted this in his records. Over one year later in October of 2003, Hasbro released a new board game entitled "Clue FX Game," marketing it as a classic "Whodunit" game. Indigo Moon claims that the

"Clue FX Game" incorporates great aspects of the concepts and designs developed by Indigo Moon for their "Clue" project with Hasbro.

On January 4, 2005, the bankruptcy trustee filed its formal report for "No Distribution" in the Indigo Moon bankruptcy proceedings, noting that the intellectual property claims for developments by Indigo Moon were secured by Regional Bank. In the Spring of 2005, Hasbro released another board game, this one entitled "Clue Mysteries." Indigo Moon also claims that this new game incorporates substantial aspects of the game-play rules, concepts and designs developed by Indigo Moon for their "Clue" project with Hasbro.

In August of 2005 Indigo Moon brought suit against Hasbro alleging six (6)counts including: 1) breach of express contract; 2) breach of implied contract; 3) promissory estoppel; 4) quasi-contract and unjust enrichment; 5) breach of confidential relationship; and 6) misappropriation of trade secrets. In their Motion for Summary Judgment, the Defendants deny the Counts, arguing that: Indigo Moon does not have standing to bring the case because of the bankruptcy proceedings for Indigo Moon; Indigo Moon failed to state a claim upon which relief can be granted because they do not assert sufficient facts, only the bankruptcy trustee may bring the claim, and Indigo Moon fails to meet the statute of limitations for Count Six (6); Counts Three (3) - Five (5) are preempted by the Kentucky Uniform Trade Act ("KUTA"); and Counts One (1) and (2) should be dismissed. The Plaintiff responded to the Defendants' arguments asserting that Indigo Moon does have standing, that the claims are timely and properly asserted, and the contractual remedies are not preempted. In addition, Indigo Moon argues that rather than dismissing their case over the bankruptcy matter, the Court should refer the matter to the trustee in order to resolve any doubts as to who should and can bring this claim against Hasbro.

However, Indigo Moon acknowledged that Count Four (4) is preempted by KUTA, and subsequently dropped that count.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## DISCUSSION

In their motion Hasbro made several arguments to have the claim dismissed as a matter of law. However, before the Court may address these matters, the Court must first determine whether or not Indigo Moon has standing to bring these claims against Hasbro. In particular, the Court must address whether or not the phrase "game projects in various stages of development" listed on the initial bankruptcy schedule includes the misappropriation of trade secrets claim.

Pursuant to 11 U.S.C. §554( c ), in order for listed property/assets to be abandoned by the trustee and returned to the debtor, the debtor must "formally" schedule the property before the close of the bankruptcy case. *See Vreugenhill v. Navistar International Transportation Corporation*, 950 F.2d 524, 526 (8th Cir. 1991); 4 *Collier on Bankruptcy*, ¶ 554.02 [5]. Indigo Moon argues that it listed the claim for misappropriation of trade secrets through the language of "game projects in various stages of development." Both Indigo Moon and Hasbro cite the case of *Cusano v. Klein*, where the Ninth Circuit Court of Appeals determined that the word "songrights" would include copy rights and royalty payment claims for songs written for the band "KISS." *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001). However, the Court went on to state that it would have been "helpful" for Cusano to have been more descriptive and specific in the listing as to copyright agreement claims.

In the instant matter, the words "game projects in various stages of development" cannot reasonably be interpreted to include a claim for misappropriation of trade secrets. In *Cusano*, should the debtor had listed "songs," rather than "songrights," the Court could have easily interpreted the word not to include the copyright claims, especially in light of the fact that the Court would have preferred a more descriptive listing. Here, the broad language used by Indigo Moon could be interpreted to include a multitude of claims, but taken alone in the context of a bankruptcy schedule it does not imply a cause of action for misappropriation of trade secrets as "songrights" did for a copyright claim in *Cusano*. As such, Indigo Moon never "formally" scheduled its claim against Hasbro for misappropriation of trade secrets. Essentially, Indigo Moon listed a category of assets, which possibly could include a multitude of claims, but did not list a specific enough claim as required by 11 U.S.C. §554.

Indigo Moon has also asserted that it did not list the misappropriation of trade secrets claim because it did not accrue until after Indigo Moon had filed for bankruptcy, and that once the claim was converted from a Chapter 11 to Chapter 7 bankruptcy claim, the onus was on the trustee to schedule the claim. However, causes of action that arise after the bankruptcy filing become part of the estate. *Correll v. Equifax Check Services, Inc.*, 234 B.R. 8, 10 (D. Conn. 1997); *Polvay v. B.O. Acquisitions, Inc.*, 1997 WL 188127 *2 (S.D.N.Y. 1997). In the instant matter, when the initial misappropriation claim accrued in 2003, it became a part of the bankruptcy estate. As mentioned *supra*, neither the estate nor Indigo Moon properly scheduled the claim for distribution. As such, the bankruptcy estate never abandoned the claim when it filed its Report of No Distribution on January 4, 2005. Therefore, Indigo Moon did not have standing to bring the claim because the claim still belongs to the bankruptcy estate.

Pursuant to 11 U.S.C. §554(d), unscheduled property not abandoned by the trustee remains part of the estate. *See Tuttle v. Equifax Check Services*, 1997 WL 835055 (D. Conn.). Though some jurisdictions would dismiss the claims brought by the debtor for lack of standing when the claim remains a part of the bankruptcy estate following the discharge of the estate, the Sixth Circuit Court of Appeals does not follow this standard. In an opinion by Judge Boggs, the Court, in *Bittel v. Yamato International Corporation*, determined that when a debtor does not raise a claim during the course of the bankruptcy estate, the debtor may nonetheless petition the bankruptcy court after the discharge of the estate to reopen the case or allow a debtor to amend his/her schedule. *Bittel v. Yamato International Corporation*, 70 F.3d 1271, *2 (6th Cir. 1995). The Court reasoned that permitting a debtor to pursue a claim after the discharge of the bankruptcy follows the "plain mandate" of the Bankruptcy Code to permit the reopening of a

6

bankruptcy case "to accord relief to the debtor." *Id.* at *3. The Court also stated that a non-party to a bankruptcy should not be allowed to use the bankruptcy to shield itself from potential liability. *Id.*

In the instant matter, Hasbro contends that their motion to dismiss should be granted because Indigo Moon lacks standing to bring the misappropriation of trade secrets claim. However, based on the holding in *Bittel*, Indigo Moon should be permitted to petition the bankruptcy court to reopen the case. As such, the Court holds that Indigo Moon shall have sixty (60) days from the date of this opinion to petition the bankruptcy court to reopen its case. The Court will then proceed based upon the determination of the bankruptcy court. The remaining claims brought by Hasbro in their motion to dismiss are therefore denied at this time, with leave to re-file should the bankruptcy court permit Indigo Moon to reopen its case and to pursue the lawsuit. At that time, Hasbro could resubmit its previously filed motion to dismiss and/or any other appropriate motion.

An appropriate order shall issue.