UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO.: 3:05cv457-R

INDIGO MOON PRODUCTIONS, LLC                                                    PLAINTIFF

v.

HASBRO, INC., et. al.                                                          DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Defendants renewed Motion to Dismiss (Docket #33). The Plaintiff has responded (Docket #35), and the Defendants have replied to that response (Docket #42). Subsequent to that, the Plaintiff filed a surreply (Docket #45). This matter is now ripe for adjudication. For the following reasons the Defendants' motion is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This case relates to the alleged theft by Defendants, Hasbro Inc. ("Hasbro"), of Plaintiff Indigo Moon Productions, LLC's ("Indigo Moon") ideas and concepts related to the popular board game "Clue," which is distributed by Hasbro. On June 28, 2000, the parties entered into a "Confidential Information Agreement" ("Agreement"), which set forth the terms in which the companies were to explore the possibility of working on the development of interactive games based on the board game "Clue." Some of the features of the Agreement included: that the materials discussed and developed would remain secretive; that Hasbro would only use the materials developed by Indigo Moon as defined by the stated purpose of the Agreement; and all property received shall remain the property of the disclosing party.

In August of 2000, Hasbro gave Indigo Moon a "wish list" that suggested some game development initiatives. One month later Hasbro again contacted Indigo Moon, this time asking

Indigo Moon to design and develop an expansion or upgrade for the "Clue" game that would work on a "Play Station 2" system and personal computers. From these requests Indigo Moon submitted a proposal to Hasbro on November 13, 2000, entitled "Clue: Whodunit Design Proposal," which Indigo Moon had designated as their own "confidential property." Indigo Moon states that it was industry custom and practice for a party requesting information to compensate the other party for the games designs or concepts that are used by the receiving party. In late 2000 Hasbro was acquired by Infogrames, Inc., and became known as "Atari Interactive." After the acquisition Indigo Moon still kept in contact with the Defendants regarding the "Clue" project. By the Spring of 2001, the Defendants communicated to Indigo Moon that they no longer wanted to work with Indigo Moon on the "Clue" project. Indigo Moon states that the Defendants assured Indigo Moon that they would not use any of the Plaintiff's concepts, designs or ideas.

In July 2001, Indigo Moon filed for Chapter 11 bankruptcy, which was later converted to a Chapter 7 bankruptcy claim on December 19, 2001. Indigo Moon listed "Game projects in various stages of development" as part of their assets prior to the Chapter 7 conversion. On February 8, 2002, Indigo Moon explained to the bankruptcy trustee assigned to their case that the "game projects" included the "Clue" upgrade, and the trustee, John R. Wilson, noted this in his records. Over one year later in October of 2003, Hasbro released a new board game entitled "Clue FX Game," marketing it as a classic "Whodunit" game. Indigo Moon claims that the "Clue FX Game" incorporates great aspects of the concepts and designs developed by Indigo Moon for their "Clue" project with Hasbro.

On January 4, 2005, the bankruptcy trustee filed its formal report for "No Distribution" in

the Indigo Moon bankruptcy proceedings, noting that the intellectual property claims for developments by Indigo Moon were secured by Regional Bank. In the Spring of 2005, Hasbro released another board game, this one entitled "Clue Mysteries." Indigo Moon also claims that this new game incorporates substantial aspects of the game-play rules, concepts and designs developed by Indigo Moon for their "Clue" project with Hasbro.

In August of 2005 Indigo Moon brought suit against Hasbro alleging six (6)counts including: 1) breach of express contract; 2) breach of implied contract; 3) promissory estoppel; 4) quasi-contract and unjust enrichment; 5) breach of confidential relationship; and 6) misappropriation of trade secrets. The Court granted in part the Defendants' first Motion to Dismiss, holding that the trustee in bankruptcy, not Indigo Moon, had rights to bring the misappropriation claim against the Defendants, and dismissed in part the remainder of the Defendants' claims, with leave to re-file (Dockets #21 & #22). In their Renewed Motion to Dismiss, the Defendants once again deny the counts against them, arguing that: Indigo Moon failed to state a claim upon which relief can be granted because they do not assert sufficient facts to support a claim for misappropriation of trade secrets; the trade secrets claim is barred by the statute of limitations; Counts III - V of the complaint are preempted by the Kentucky Uniform Trade Secrets Act ("KUTSA"); Counts I and II should be dismissed because they are precluded by the Agreement; the Plaintiff's confidential relationship claim should be dismissed as a matter of law; all of the Plaintiff's claims based on "non-written" contracts are time-barred; and that the Plaintiff is not a real party in interest for this matter.

**STANDARD**

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

**DISCUSSION**

As noted *supra*, in their motion to dismiss the Defendants make seven (7) arguments as to why the Plaintiff's complaint should be dismissed. The Court will address each of these arguments separately.

**1. Sufficient Facts to Support a Misappropriation of Trade Secrets Claim**

The Defendants contend that the word "concepts" used in the Plaintiff's complaint to describe trade secrets allegedly misappropriated by Hasbro is not sufficient under Kentucky law to support a misappropriation of trade secrets claim. The Defendants assert that Indigo Moon failed to describe the concepts in question, and therefore, failed to properly allege a claim under

4

KUTSA, KRS §365.880.  Hasbro insists that the Plaintiff must assert factual allegations in the complaint in order to bring a claim for misappropriation of trade secrets.  However, in looking at the complaint, the Plaintiff has stated a proper claim under FRCP 8.  The Plaintiff has alleged that the Defendants misappropriated concepts on two (2) instances, in October 2003 and Spring 2005.  At this juncture, under the liberal pleading requirements, the Plaintiff is not required to litigate its case by asserting specific factual allegations against the Defendants.  At this time, the Court cannot properly determine whether the Plaintiff lacks sufficient facts to assert a claim for misappropriation of trade secrets.   Accordingly, the Plaintiff has provided sufficient facts in its complaint to support a claim under KUTSA.

### 2. Statute of Limitations as to the Misappropriation of Trade Secrets Claim

Hasbro asserts that the Plaintiff failed to bring its misappropriation claim against the Defendants within the applicable statute of limitations period because they argue that the Plaintiff discovered the alleged misappropriation in July 2001 when it filed for bankruptcy, and the suit was brought against Hasbro in August 2005, more than three (3) years later.  In addition, the Defendants contend that Indigo Moon cannot rely on the "continuing tort theory" because that theory does not apply in the Sixth Circuit, and that the Plaintiff should have discovered the alleged misappropriation in 2001.  The Plaintiff contends that the Defendants have misconstrued the statements within the Plaintiff's complaint, and that the applicable statute of limitations began to toll in October 2003, when Hasbro allegedly misappropriated its trade secrets upon releasing the board game "Clue FX Game."  The Plaintiff further argues that it would not have been reasonable to assume that Hasbro would have misappropriated its trademark when Indigo Moon filed for bankruptcy in 2001 because the Plaintiff assumed that Hasbro did not want to use


its designs, and therefore, would not misappropriate its trade secrets.

KRS §365.890 states that "[a]n action for misappropriation must be brought within three (3) years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.  For the purposes of this section, a continuing misappropriation constitutes a single claim."  Both parties reference the Sixth Circuit Court of Appeals case of *Amalgamated Industries Ltd v. Tressa, Inc.* in support of their respected arguments. *Amalgamated Industries Ltd v. Tressa, Inc.*, 69 Fed. Appx. 255, 260-263 (6th Cir. 2003)("*Tressa*").  In *Tressa*, the Court examined when a misappropriation accrues for purposes of KUTSA. *Id.* at 262.  The Court held that a cause of action accrues when the initial act of misappropriation takes place. *Id.*  However the facts in that matter differ from the case at hand, where the Court in *Tressa* held that subsequent misappropriation claims that occurred after the plaintiff had brought suit against the defendant for misappropriation of trade secrets were considered part of the initial suit for statute of limitations purposes. *Id.* at 262-63.  Nonetheless, here, the Court must ascertain when the alleged misappropriation took place, consistent with the reasonable discovery rule stated in KRS §365.890.

In determining when a misappropriation claim occurs, the Court in *Tressa* looked at the commentary of KUTSA, which stated in pertinent part "'[t]his Act rejects a continuing wrong approach to the statute of limitations but delays the commencement of the limitation period until an aggrieved person discovers or reasonably should have discovered the existence of misappropriation.  If objectively reasonable notice of misappropriation exists, three years is sufficient time to vindicate one's legal rights.'" *Id.* at 261 (*quoting* Unif. Trade Secrets Act, com. to § 6, p. 462).

In the instant matter, the Defendants assert that Indigo Moon should have reasonably discovered any misappropriation claim in 2001 when it filed for bankruptcy because it knew that Hasbro wanted to upgrade its "Clue" game internally. However, in applying the rationale stated in the commentary of KRS §365.890, the Court finds that it would not have been reasonable for Indigo Moon to attempt to discover any misappropriation of their trade secrets by Hasbro at that time because they were not put on any notice that by the Defendants nor could Indigo Moon have reasonably expected that Hasbro would misappropriate its trade secrets after Hasbro decided not to do business with Indigo Moon in the Spring 2001. For purposes of this action it now appears that Indigo Moon discovered any misappropriation of its trade secrets when Hasbro released the Clue FX Game in October 2003. Therefore, the Court finds that the statute of limitations for this matter began to toll in October 2003. Accordingly, based on the facts now known to the Court, the misappropriation of trade secrets claim filed by Indigo Moon is not precluded by the statute of limitations.

**3. Preemption of Counts III, IV, and V by the Kentucky Uniform Trade Secrets Act**

The Plaintiff admits that Count IV of the complaint is preempted by KUTSA; as such, the Court must determine whether Indigo Moon's claims for promissory estoppel (Count III) and breach of confidential relationship (Count V) are preempted under KUTSA, KRS §365.892. KRS §365.892 states:

> (1) Except as provided in subsection (2) of this section, KRS 365.880 to 365.900 replaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
>
> (2) KRS 365.880 to 365.900 shall not affect:
> (a) Contractual remedies, whether or not based upon misappropriation of a trade secret;
> (b) Other civil remedies that are not based upon misappropriation of a trade secret;

>or
>(c) Criminal remedies, whether or not based upon misappropriation of a trade secret.

Both parties cite the Western District of Kentucky case of *Auto Channel, Inc. v. Speedvision Network, LLC* in support of their arguments regarding KUTSA preemption. *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 790-794 (W.D. Ky. 2001) ("*ACI*"). The Court will address each count individually.

### *Count III*

In *ACI*, the Court, in an opinion by Judge Heyburn, determined that KRS §365.892 preempts certain state law claims if they relate to the a misappropriation of trade secret claim or if they did not arise from a contractual remedy. *ACI* at 788-89. In examining a promissory estoppel claim asserted by the plaintiffs against the defendants, the plaintiffs alleged two (2) theories of recovery. *Id.* at 791-92. The plaintiffs contended that they relied upon a promise by the defendants not to compete with the plaintiffs, and also argued that they relied upon the defendants' promises that induced the plaintiffs to disclose trade secrets. *Id.* The Court distinguished between the two (2) promissory estoppel claims. *Id.* at 792. The Court held that the former promissory estoppel claim, which dealt with the defendants' alleged promise not to compete, was not related the misappropriation of trade secrets claim, and therefore, not preempted by KUTSA. *Id.* at 792. However, the Court held that the latter promissory estoppel claim, which dealt with an alleged promise that induced the plaintiff to disclose their trade secrets was related to misappropriation of trade secrets claim, and therefore, was preempted by KUTSA. *Id.*[1] Other jurisdictions have reached similar conclusions when interpreting their

---

[1] The Court also dismissed the promissory estoppel claim relating to the promise not to compete because the Court found that the plaintiffs could not prove the promise induced a reliance on the part of the plaintiffs nor that the promise was clear and definite. However, that matter was a motion for summary judgment, not a motion to dismiss.

8

respected trade secret acts in relation to preemption of promissory estoppel claims. *See Lucini Italia Co. v. Grappolini*, 2003 WL 1989605, *22-23 (N.D. Ill. 2003); *Firoozye v. Earthlink Network*, 153 F.Supp.2d 1115, 1126-28 (N.D. Cal. 2001).

      Here, Count III of the complaint, in Paragraph 59, states that the Defendants "promised to compensate Indigo Moon if they utilized Indigo Moon's concepts and contributions relating to the Clue project." Paragraph 60 within that same count states that "the Defendants made these promises with the intent to induce Indigo Moon's reliance upon them and to thereby induce Indigo Moon's work efforts, communication, and delivery of its concepts and contributions relating to the Clue project." In Paragraph 62, the Plaintiff states that the Defendants have utilized "certain concepts and ideas developed by Indigo Moon, but not have compensated Indigo Moon for those *efforts* and/or *concepts*."

      The language of the complaint relating to the concepts indicates that in part, the promissory estoppel claim relates to the misappropriation of trade secrets claim. Specifically, the Plaintiff states that it wishes to recover for a promise made by the Defendants that induced them into turning over their trade secrets to Hasbro. In essence, this claim would be the same claim asserted by the Plaintiff under KUTSA. Accordingly, the promissory estoppel claim as to alleged inducement by the Defendants to have the Plaintiff turn over its concepts is preempted by KUTSA.

      In regards to the efforts made by Indigo Moon in designing and developing the concepts, that particular claim under a theory of promissory estoppel also appears on its face to relate to the misappropriation of trade secrets claim because it involves the work that was put in to create

---

*ACI*, 144 F. Supp. 2d at 792.

9

the concepts. However, the work put into designing the concepts differs from the actual concepts themselves because the Defendants could have promised to pay the Plaintiff for its work separate from a promise to pay the Plaintiff for its trade secrets. Therefore, the Court finds that the promissory estoppel claim in relation to the efforts put in by the Plaintiff in designing the concept does not directly relate to the claim of misappropriation of trade secrets. At this time, the Court cannot determine whether or not Hasbro made any promises to Indigo Moon that show a clear promise that was reasonably expected to induce action on the part of Indigo Moon, relating to the efforts made by Indigo Moon in designing and developing the new concepts for the Clue game. *ACI* at 791-92 (*citing McCarthy v. Louisville Cartage Co., Inc.*, 796 S.W.2d 10, 11-12 (Ky. Ct. App. 1990). In particular, the actions of Hasbro representatives in August 2000, September 2000, and late 2000 through 2001 leave questions as to whether or not the Plaintiff continued working on the project based on promises made by the Defendants. The answers to these questions will become more clear after discovery. Accordingly, the promissory estoppel claim, as it relates to the efforts made by Indigo Moon in developing and designing the concepts, shall go forward at this time.

### *Count V*

The Defendants contend that Count V should fail as a matter of law because KUTSA preempts breach of fiduciary duty claims. *ACI* at 793. However, the Plaintiff asserts that Count V is not a claim for breach of fiduciary duty, but instead is a claim of breach of implied covenant of a duty of good faith and fair dealing with respect to the protection and use of the designs and concepts in question. The Court must resolve this matter before it can address whether or not KUTSA preempts the claim.

The Sixth Circuit Court of Appeals, in *Minger v. Wilson*, explained that Courts must look "beyond labels [of a complaint] to the substance of the allegations." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001). In *Minger*, the Court determined that even though the complaint labeled a claim for negligent performance, in actuality the complaint stated a claim for intentional misrepresentation. *Id.* In the instant matter, Count V is labeled as a claim for "Breach of Confidential Relationship." However, within the body of the claim, Paragraph 73 states that "[e]ach of the Defendants also owed Indigo Moon a duty of good faith and fair dealing with respect to the protection and use of Indigo Moon's designs and concepts relating to the Clue project." Paragraph 74 goes on to state that "the Defendants breached their duties arising out of this confidential relationship." The contract signed by the parties is formally titled as a "Confidential Information Agreement." This contract, just like every contract, comes with an implied covenant of good faith and fair dealing. *See Ranier v. Mount Sterling National Bank*, 812 S.W.2d 154, 156 (Ky.1991). As such, the language within the complaint suggests that the Plaintiff has asserted a claim against the Defendants for breach of implied covenant of good faith and fair dealing.

In *ACI*, the Court indicated that because a claim for breach of implied covenant of good faith and fair dealing arises from a contract, KUTSA does not preempt such a claim. *ACI* at 791. Accordingly, the claim against the Defendants for breach of implied covenant of good faith and fair dealing shall go forward at this time.

### 4. Confidential Relationship Claim

The Defendants contend that Count V, the confidential relationship claim, must be dismissed as a matter of law. However, as determined *supra*, Count V is a claim against the

Defendants for breach of implied covenant of good faith and fair dealing. Accordingly, Count V shall go forward at this time.

**5. The Terms of Confidential Information Agreement Precluding Count I and Count II**

The Defendants argue that Counts I and II of the Plaintiff's complaint, which asserts claims for breach of express and implied contract, respectively, should be precluded because of the express terms of the Agreement. In particular, the Defendants contend that the purpose behind the Agreement was to explore the possibility of working together on a project, and did "not obligate either party to deliver a purchase order for the performance of any service or for the supply of any article whatsoever," and does "not obligate either party to perform any service or to furnish any proposal or comments."

In its complaint, under Count I, the Plaintiff states that Indigo Moon and the Defendants were in privity with one another, and because the Defendants utilized its concepts when designing the Clue FX and Clue Mysteries games the Defendants should compensate Indigo Moon. Indigo Moon claims that the obligations arose out of both the Agreement itself as well as spoken obligations. Specifically, the complaint states that the Defendants used the concepts in a manner inconsistent with the Agreement; the Defendants exercised rights of ownership over the concepts, even though such rights were expressly reserved by the Plaintiff; the Defendants disclosed Indigo Moon's concepts to third parties; and Defendants failed to protect the concepts from unauthorized use and disclosure. Under Count II, the Plaintiff states that the Defendants breached an implied contract between the parties because it was understood that the Defendants would compensate the Plaintiff for its efforts made in developing the concepts.

In looking at compensation claims within Counts I and II, the Defendants suggest that

Rhode Island law governs the Agreement. Under Rhode Island law, Hasbro asserts that any spoken understandings about compensation that Indigo Moon argues should be considered by the Court should be excluded under the parol evidence rule. In particular, the Defendants contend that because the Agreement is silent as to the terms regarding compensation and remedies the Court should only look at what is in the document itself. However, the Plaintiff contends that spoken promises, industry custom and practices, and implied promises should come in regarding compensation and remedies because the Agreement is silent to them.

The Rhode Island Supreme Court has held that "[i]n situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to extrinsic facts or aids." *Clark-Fitzpatrick, Inc./Franki Foundation Co. v. Gill*, 652 A.2d 440, 443 (R.I.1994) (*citing Greenwald v. Selya & Iannuccillo*, 491 A.2d 988, 989 (R.I.1985)). Rhode Island also adheres to the rule that "when considering 'whether a contract is clear and unambiguous, the document must be viewed in its entirety and its language be given its plain, ordinary and usual meaning.'" *Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc.*, 852 A.2d 535, 542 (R.I. 2004) (*citing Rubery v. Downing Corp.*, 760 A.2d 945, 947 (R.I.2000)).

In looking at the Agreement in its entirety, it is clear that its purpose was to explore the possibility of the parties working together, and not providing compensation to Indigo Moon for its efforts in designing game concepts for Hasbro. The purpose section of the Agreement clearly expresses this sentiment, stating that the purpose is "[t]o explore the possibility of Hasbro and the Company cooperating on the production or exploitation of certain interactive games, including, without limitation, on-line games." The Court will not alter the purpose and terms of

13

the Agreement by permitting statements concerning the alleged compensation of Indigo Moon for their work effort to come in to interpret the Agreement.  Therefore, the Court finds that Count I shall be dismissed in part, as it relates to compensation to Indigo Moon for their work efforts, and that Count II of the complaint is dismissed in its entirety.

The Agreement also provides protection to the parties for their respected property rights. The Plaintiff alleges the Defendants disclosed these rights to third parties without its permission, failed to protect these rights, and the used the rights inconsistently in accordance with the purpose of the Agreement.  The Plaintiff has put forth sufficient facts in its complaint to support these claims, and therefore, has met its burden in demonstrating that this claim can go forward at this time.  Therefore, the Court finds that Count I shall go forward at this time, as it relates to the protection of property rights of Indigo Moon.

### 6. Statute of Limitations as to the Plaintiff's Non-Contractual Claims

The Defendants contend that the Plaintiff's non-contractual claims, including Counts III and V, are time-barred by a five (5) year statute of limitations under KRS §413.120(1) and (7). The Defendants make this argument under the assumption that the statute of limitations in this matter began to toll in July 2001.  However, as determined *supra*, the applicable statute of limitations in this matter is October 2003, not July 2001.  Accordingly, the Plaintiff's non-contractual claims are not time-barred.

### 7. Party of Interest

A motion to substitute party (Docket #34) was filed by the Plaintiff subsequent to the Defendants' filing of their renewed motion to dismiss (Docket #33).  The Court has granted the

motion to substitute party prior to rendering its decision on this motion.  Accordingly, the proper party of interest was considered by the Court in this matter, and therefore, the complaint shall not be dismissed pursuant to FRCP 17.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.  The Plaintiff has alleged sufficient facts to support its misappropriation of trade secrets claim.  The statute of limitations does not preclude the claims asserted by the Plaintiff against the Defendants in this matter.  Count IV and the promissory estoppel claim of Count III, as it relates to the concepts designed by Indigo Moon, fail as a matter of law.  The promissory estoppel claim of Count III, as it relates to the efforts of Indigo Moon in designing the concepts, shall go forward at this time.  Count V, as put forth in the complaint, is a claim for breach of implied covenant of good faith and fair dealing, and shall go forward at this time.  Count I, as it relates to compensation under the Agreement, fails as a matter of law and is dismissed; however, Count I, as it relates to the protection of property rights, shall go forward at this time.  Count II, in its entirety, fails as a matter of law and is dismissed.  Lastly, when rendering this decision, the Court considered the proper party of interest.

An appropriate order shall issue.