UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:05-CV-457-R

JOHN R. WILSON, as Bankruptcy
Trustee for the Estate of INDIGO
MOON PRODUCTIONS, LLC                                                              PLAINTIFF

v.

HASBRO, INC., ET AL.                                                               DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the Court on Defendants Hasbro, Inc. and Atari Interactive Inc.'s Motion for Summary Judgment (Docket #72). Plaintiff John Wilson has filed a response (Docket #82). Defendants have filed a reply (Docket #87). Plaintiff has filed a sur-reply (Docket #95). This matter is now ripe for adjudication. For the following reasons, Defendants' motion is GRANTED.

**BACKGROUND**

This case relates to the alleged theft by Defendant Hasbro, Inc. ("Hasbro") of Indigo Moon Productions, LLC's ("Indigo Moon") ideas and concepts related to the popular board game "Clue," which is distributed by Hasbro. Hasbro is composed of separate divisions, such as Milton Bradley, Parker Brothers, and Playskool. Hasbro Interactive Inc. is a former division of Hasbro, created to develop an interactive PC-ROM version of the game Monopoly.

On June 28, 2000, Indigo Moon and Hasbro Interactive entered into a Confidential Information Agreement ("Agreement"), which sets forth the terms in which the companies were to explore the possibility of working on the development of interactive games based on the board game "Clue." Some of the features of the Agreement included that the material discussed and developed would remain secretive; that Hasbro would only use the materials developed by Indigo Moon as

defined by the stated purpose of the Agreement; and all property received shall remain the property of the disclosing party.

In August of 2000, Hasbro Interactive gave Indigo Moon a "wish list" that suggested some game development initiatives. One month later, Hasbro Interactive again contacted Indigo Moon, this time asking Indigo Moon to design and develop an expansion or upgrade for the "Clue" game that would work on "Play Station 2" systems and personal computers. From these requests Indigo Moon submitted a proposal to Hasbro Interactive on November 13, 2000, entitled "Clue: Whodunit Design Proposal" ("Design Proposal"), which Indigo Moon had designated as their own "confidential property." Indigo Moon states that it was industry custom and practice for a party requesting information to compensate the other party for the games designs or concepts that are used by the receiving party.

In late 2000 or early 2001, Hasbro Interactive was acquired by Infogrames, and later became known as "Atari Interactive." After the acquisition, Indigo Moon still kept in contact with the Atari Interactive regarding the "Clue" project. By the Spring of 2001, Atari Interactive communicated to Indigo Moon that they no longer wanted to work with Indigo Moon on the "Clue" project. Indigo Moon states that the Atari Interactive assured Indigo Moon that they would not use any of the Plaintiff's concepts, designs or ideas.

In July of 2001, Indigo Moon filed for Chapter 11 bankruptcy, which was later converted to a Chapter 7 bankruptcy claim on December 19, 2001. Indigo Moon listed "Game projects in various stages of development" as part of their assets prior to the Chapter 7 conversion. On February 8, 2002, Indigo Moon explained to the bankruptcy trustee assigned to their case that the "game projects" included the "Clue" upgrade, and the trustee, Plaintiff John R. Wilson, noted this in his

records. Over one year later in October of 2003, Hasbro released a new board game entitled "Clue FX Game," marketing it as a classic "Whodunit" game. Later, Hasbro released a board game entitled "Clue Mysteries." Indigo Moon claims that Clue FX and Clue Mysteries incorporate aspects of the concepts and designs developed by Indigo Moon in its Design Proposal.

In August of 2005, Indigo Moon brought suit against Hasbro alleging six (6) counts, including: 1) breach of express contract; 2) breach of implied contract; 3) promissory estoppel; 4) quasi-contract and unjust enrichment; 5) breach of confidential relationship; and 6) misappropriation of trade secrets.

On November 17, 2006, the Court granted in part Defendants' motion to dismiss. The Court dismissed Count I as it relates to compensation under the Agreement, but allowed Count I to go forward as it relates to the protection of property rights. Count II was dismissed in its entirety. Count III was allowed to go forward as it relates to the efforts of Indigo Moon in designing the concepts. Count IV was dismissed. Count V was allowed to go forward as a claim for breach of implied covenant of good faith and fair dealing. Count VI was also allowed to go forward.

Defendants have now filed for summary judgment on all claims remaining. Defendants argue that Plaintiff has no evidence that Hasbro used Indigo Moon's Design Proposal, and therefore they are entitled to judgment as a matter of law.

**STANDARD**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate,

3

a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

### A. Plaintiff's misappropriation of a trade secret claim

The parties briefs focus on Plaintiff's misappropriation of trade secrets claim concerning the game Clue FX. Misappropriation of a trade secret includes the "use of a trade secret of another without express or implied consent" by a person who meets certain other criteria. KRS § 365.880(b). Therefore, if Plaintiff is to succeed in his trade secrets claim, Plaintiff must prove that Hasbro used Indigo Moon's secrets. Defendants argue that there is no evidence that Hasbro used the Design Proposal in the creation of Clue FX.

Defendants state that the principal game designer of Clue FX was Craig VanNess.

VanNess's affidavit states the he did not use any existing proposal or any other person's ideas in the creation of Clue FX. Other Hasbro employees connected to the creation of Clue FX also denied any knowledge of the existence of the Design Proposal before the commencement of this litigation. Defendants have submitted evidence that the development of Clue FX was based on the creation of "conductive ink technology."

"If the moving party fulfills its burden of demonstrating that no genuine issue of material fact exists, the nonmoving party, to receive a trial, must present some significant probative evidence creating a factual issue." *Id.* at 597. Hasbro's employees' affidavits state that the employees responsible for the creation of Clue FX were unaware of the existence of the Design Proposal. Unless the employees' credibility is impeached, these affidavits are sufficient to satisfy Defendants' burden. *Id.* at 597-599. Here, Plaintiff does not dispute the credibility of the employees. Because Defendants have satisfied their burden, the burden shifts to Plaintiff, who must produce sufficient evidence of use to create a genuine issue of material fact as to whether Hasbro used Indigo Moon's secrets in the creation of Clue FX. *Id.* at 599-600. *See also Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 796 (W.D. Ky. 2001) ("In the face of sworn statements from Defendants, Plaintiffs must identify some act of misappropriation regarding the list, not just a result that could just as easily have been achieved by independent efforts.").

Plaintiff agrees that he has no direct evidence that Hasbro used Indigo Moon's secrets. However, "a strong argument could be made that courts may properly consider circumstantial evidence concerning similarity of design plus access to the design to imply use by a defendant of a trade secret." *Stratienko v. Cordis Corp.*, 429 F.3d 592, 600 (6th Cir. 2005). In other words, [p]ointing to the defendant's development of a similar product, after exposure to secrets, is another

5

classic avenue of proof." 877 PLI/Pat 425. If sufficient evidence of access and similarity is offered, it is entirely reasonable for the jury to infer that Hasbro used Indigo Moon's trade secret. *Stratienko*, 429 F.3d at 600.

The Court follows the Sixth Circuit's reasoning that case law from other courts suggests that Kentucky wold most likely permit circumstantial evidence of use in trade secret cases. *Id. See also In re Dippin' Dots Patent Litigation*, 249 F. Supp 2d 1346, 1375 n.3 (N.D. Ga. 2003) ("Kentucky recognizes the decisions of other Uniform Act jurisdictions as persuasive authority for their own version of the Act."). "Sufficient circumstantial evidence of use in trade-secret cases must demonstrate that (1) the misappropriating party had access to the secret and (2) the secret and the defendant's design share similar features." *Stratienko*, 429 F.3d at 600.

**1. Access**

If Plaintiff can demonstrate that the entity that developed Clue FX had access to Indigo Moon's information, this would be sufficient evidence of access. "It would be very burdensome to require [a plaintiff] to demonstrate that a particular inventor or designer had access." *Id.* at 601. Instead, it is sufficient to show that the entity that developed Clue FX had access to the information. *Id.* The entity that developed Clue FX was Hasbro.

Plaintiff argues that it has offered enough evidence for a reasonable jury to find that Hasbro had access to the Design Proposal. First, Plaintiff states that from 1998 until January 2001 Atari Interactive was known as Hasbro Interactive, and was a division of Hasbro. Hasbro Interactive also shared an office building with Hasbro until April 2000.

However, the Design Proposal was not created until November 2000. At that time, Hasbro Interactive did not share an office with Hasbro, and Hasbro Interactive was in the process of being

6

sold to Infogrames.  Plaintiff has even less evidence concerning any potential access of Hasbro to the Design Proposal after Hasbro Interactive was sold to Infogrames.  Plaintiff states that Hasbro continued to "interact" with Hasbro Interactive/Atari Interactive employees even after Hasbro moved its offices to a different city and Atari Interactive was owned by Infogrames.  For example, Stephen Baker, Director of Product Design for Hasbro had some contact with Larry Harris, who worked for Atari Interactive.  Craig VanNess had some interaction with a Hasbro Interactive/Atari Interactive employee named Tom Zahorik.  In August 2002, Derrell Merino learned that Atari Interactive was developing an interactive version of Clue.  Hasbro's marketing representative encouraged Hasbro and Infogrames to use the same art and thematic materials in any interactive or analog version of Clue to create "synergy in the marketplace."  As such, Atari Interactive shared with Hasbro its artwork for the Clue Mansion.  In addition, Stephen Baker had the opportunity to view a proposed Clue game from Atari Interactive in 2003.  He stated that the game involved magical power-ups and teleporting, and that it did not fit in with the Clue brand.

    Plaintiff argues that this evidence is sufficient for a reasonable jury to find that Hasbro had access to the Design Proposal.  However, Hasbro did not share office space with Hasbro Interactive at the time of the submission of the Design Proposal.  Plaintiff has not articulated any theory as to how or when Hasbro had access to the Design Proposal.  Two possibilities are that either Hasbro had access to the Design Proposal without Atari Interactive's knowledge, or that Atari Interactive gave Hasbro access to the Design Proposal.  Therefore, to find that Hasbro had access to the Design Proposal, a jury must infer that either that Hasbro had the opportunity to view the Design Proposal during the course of its dealings with Atari Interactive, or that Atari Interactive allowed Hasbro access to the Design Proposal.

To find Defendants liable, the jury would also have to assume that the information possessed by Atari Interactive was imparted to Hasbro. This inference would be based on the fact that the sale of Hasbro Interactive was not yet final when it received the Design Proposal, combined with the above mentioned business interactions. However, given the limited nature of the evidence concerning Atari Interactive and Hasbro's business contacts, it is simply too speculative to infer that Hasbro had access to the Design Proposal. Plaintiff "only offers indirect evidence from which a reasonable jury could only speculate and could not reasonably conclude that the defendant made unauthorized use of [Plaintiff's] secret." *American Relocation Network International v. Wal-Mart Stores, Inc.*, 121 F.3d 707, 1997 WL 415313, at *3 (6th Cir. July 21, 1997).

**2. Similarity**

Plaintiff argues the Design Proposal and Clue FX are so "strikingly similar" that a reasonable jury could infer use even in the complete absence of evidence of access. Defendants, on the other hand, believe that there is insufficient proof of similarity to justify an inference of use even if there is evidence of access. Plaintiff has identified six relevant features of the Design Proposal which he claims were misappropriated by Hasbro.

Plaintiff states that Indigo Moon's key feature was that the players were crime-solvers, instead of suspects. In Clue, the players control pawns representing one of the six Clue suspects, such as Miss Scarlet or Colonel Mustard. In the Design Proposal, the players were to be crime-solvers, and would interact with suspect characters controlled by the computer. In Clue FX, the players play as one of four detective characters, rather than as one of the six Clue suspects.

Another similarity submitted by Plaintiff is that in addition to making the players separate from the suspects, the Design Proposal also contained the idea that the suspects and their movements

8

would be controlled by the game. This was not possible in the original Clue game because the players played as suspects and because Clue did not have any electronic features to control the suspects' movements independently from the players. In Clue FX, the suspect characters will move around the mansion between the players turns.

Plaintiff believes that the independent movement of suspects between turns is also a similarity from the Design Proposal's concept that game play would move in "real-time." The Design Proposal contemplates that the game play could be either turn-based or real-time. However, Clue FX is only a turn-based game, with the suspects moving between the players' turns. Additionally, the concept of "real-time" game play suggests that the players and suspects would move simultaneously, without the need to wait for anybody to complete a turn. This definition of "real-time" game play is supported by Plaintiff's brief, which states that in the Design Proposal the suspects are constantly moving in the game environment simultaneously with the players' movements. This concept of real-time game play is not found in Clue FX.

Plaintiff next states that, unlike previous versions of Clue, in both the Design Proposal and Clue FX the initial location of the suspects is determined by the game. In Clue, each player controlled suspect begins in a predetermined starting position. In Clue FX, the computer controlled suspects start in a random location on the game board. Plaintiff's response brief does not state where in the Design Proposal this concept may be found. Instead, Plaintiff points to depositions and responses to interrogatories that suggest it is a concept that was stolen. However, the Court was unable to find in the Design Proposal the initial location feature that Hasbro is alleged to have used in the creation of Clue FX. If the concept cannot be found in the Design Proposal, then it cannot have been misappropriated, and would not be protected by any confidentiality agreement.

9

Plaintiff's fifth alleged similarity between Clue FX and the Design Proposal is that both the player-controlled crime-solvers and the computer-controlled suspects have clues to the crime. In original Clue, because there were no computer-controlled characters, only players could have the Clue cards necessary to deduce which three cards were in the envelope and win the game. In Clue FX, there are six suspect envelopes, with each containing one Clue card. When a player finds the suspect on the board, the player may look at the card contained in that suspect's envelope. However, Plaintiff does not state how suspects were to have clues in the Design Proposal. Nor does Plaintiff point to any specific part of Design Proposal that would allow a comparison between the Clue FX game mechanic and Indigo Moon's secret.

Plaintiff's final similarity between the Design Proposal and Clue FX is that there are different methods of Clue gathering besides making a suggestion. In Clue FX, in addition to the players having clues that they must show when making suggestions, the suspects themselves also have clues cards as stated above. Plaintiff appears to argue that Hasbro stole this idea from Indigo Moon's idea that the clues to solving the mystery could be obtained by observation, inspection, conversation, spying, theft, and use of technology.

Plaintiff states that the different methods of Clue gathering found in the Design Proposal is reflected in the Clue FX game mechanics that allow players to discover suspects and their clues in multiple ways. However, the fact that the Design Proposal proposed that clues should be gathered in different ways, and that Clue FX has different ways of gathering clues, is not the sort of relevant, innovative feature that a jury may rely on to infer use of the secret. The fact that the Design Proposal considered different methods of clue gathering does not mean that any method of clue gathering not found in the original Clue game that is added to a Clue-brand game is automatically

10

evidence that the Design Proposal was misappropriated.

Plaintiff does specifically point to certain methods of clue gathering found in the Design Proposal which he believes were used in Clue FX. First, Plaintiff alleges that in both the Design Proposal and Clue FX players may steal clues. However, players may not steal clues in Clue FX. In Clue FX, if more than one suspect is in a location, the player may look at each of those suspects' envelopes. As Plaintiff has noted in his response brief, the suspects are not player-controlled. This game mechanic allows a single player to look at more than one envelope. It does not say anything about allowing another player to look in the envelope as well. Plaintiff has not offered evidence of any game mechanic in Clue FX where a player steals from another player.

The Design Proposal also suggests that taking a closer look within a room or hallway to find clues that would be missed during casual observation requires a player to spend extra time observing things in more detail. Plaintiff argues that this concept was used in the Clue FX game mechanic where a player may search for a suspect hiding in that game space, rather than making a suggestion.

There is some circumstantial evidence in Plaintiff's favor. However, this circumstantial evidence in not enough to survive Defendant's motion for summary judgment.

To survive a motion for summary judgment, Plaintiff must show sufficient similarity between the innovative aspects of Indigo Moon's Design Proposal and Clue FX to provide enough of a circumstantial inference to create a genuine issue of material fact. *Stratienko*, 429 F.3d at 602. "The analysis of similarity evaluates only relevant, innovative features, not all possible congruence." *Id.* The alleged key similarities are that the both the Design Proposal and Clue FX have the players controlling the movements of a detective, while a computer independently controls the movements of the six Clue suspects. Given that Defendants have submitted evidence that this concept was being

11

considered by Hasbro in 1999, it is difficult to characterize this feature as a relevant, innovative feature.

Plaintiff's other similarities are too tenuous to support an inference of use. That the Design Proposal contemplated that the players and suspects would both have clues that solve the crime does not mean that Hasbro stole the Clue FX game mechanic where each of the computer-controlled suspects have a Clue card in an envelope that a player may look at when the suspect is found. A scripted dialog system in the Design Proposal is different than the game mechanic where players "question" a suspect when he is found and automatically look in the suspect's envelope. The concept of real-time movement of the suspects found in the Design Proposal is different than the Clue FX game mechanic where the suspects move between player turns. The Design Proposal's idea that players may spend extra time searching a room or a hallway is somewhat similar to the Clue FX game mechanic where players may take part of their turn to search for hidden suspects.

Plaintiff must demonstrate similarity by comparing Indigo Moon's secret with the features of Clue FX. *Id.* at 601. The proof Plaintiff offers as evidence of the similarities is deposition testimony and Plaintiff's response to Defendants' interrogatories. Plaintiff spends little time focusing on the specifics of what is contained in the Design Proposal. When the actual Design Proposal is compared to Clue FX's game mechanics, most of the alleged similarities are only superficial. The similarities are not the sort of relevant, innovative features required by the Sixth Circuit for a jury to find an inference of use. These similarities are of the sort that "could just have easily have been achieved by independent efforts." *Speedvision Network, LLC*, 144 F. Supp. 2d at 796. Finally, any similarities between Clue FX and the Design Proposal are not so "strikingly similar" that would support a reasonable jury finding that Hasbro used Indigo Moon's secrets given

the lack of evidence of access.

## II. Other claims concerning Clue FX

Summary judgment is also appropriate for Plaintiff's other claims concerning Clue FX. Plaintiff's remaining claims require proof that Hasbro used the Design Proposal in the creation of Clue FX. Plaintiff's theory of recovery for the promissory estoppel claim is that Indigo Moon had an expectation of payment if the Design Proposal was used. However, as discussed above, Plaintiff does not have sufficient evidence for a reasonable jury to find that Hasbro used the Design Proposal. The same problem exists for Plaintiff's breach of contract claim and Plaintiff's breach of confidential relationship/breach of implied covenant of good faith and fair dealing claim. *See Stratienko*, 429 F.3d at 602 (failure to present sufficient evidence of use justified summary judgment on wrongful benefit and breach of contract claims). Given the nature of Plaintiff's allegations, without evidence that the Design Proposal was used, Plaintiff has no viable theory of recovery.

## III. Claims concerning Clue Mysteries

Finally, the Court notes that Defendants have also moved for summary judgment concerning Plaintiff's claim that Hasbro used the Design Proposal in the creation of a game called Clue Mysteries. Defendant has submitted evidence that Clue Mysteries was based on the game "Mysteries of the Orient," a game in the public domain. Plaintiff has submitted no evidence to rebut Defendant's evidence. In addition, Plaintiff's allegations that the Design Proposal was used in the creation of Clue Mysteries suffers from the same lack of evidence of access as his allegations concerning Clue FX. Therefore, Plaintiff has not satisfied his burden to create a material issue of fact. Although Plaintiff has stated that he will voluntarily dismiss his claims concerning Clue Mysteries, the Court finds that summary judgment is appropriate.

## CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.